UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS TOUPONCE,<br><br>    Plaintiff,<br><br>        v.<br><br>TOWN OF LEE, et al.,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 3:17-cv-30010-KAR<br>)<br>)<br>)<br>) |

<u>MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>
(Dkt. No. 23)

ROBERTSON, U.S.M.J.

**I.**     **Introduction**

Plaintiff Thomas Touponce ("Plaintiff" or "Touponce") brings the present action against defendants Town of Lee ("Lee" or "the Town") and its Building Inspector, Donald R. Torrico ("Torrico") (collectively, "Defendants"). Touponce previously brought litigation against the same Defendants, which resulted in a settlement agreement and payment to Touponce. According to Touponce, as a result of the prior litigation and settlement, Torrico harbors malice toward him, leading Torrico to selectively target Touponce for zoning and building code enforcement activities, to interfere with an application for zoning relief, and to wrongfully subject Touponce to civil and criminal process. Touponce also alleges that the Town failed to adequately supervise Torrico to prevent him from committing these wrongs against Touponce and appropriated and condemned Touponce's land without justly compensating him. Touponce brings claims against the Town and Torrico for violation of 42 U.S.C. § 1983 (Counts I and II) and the Massachusetts Constitution and Declaration of Rights (Count VII), against the Town for

trespass, nuisance, and unlawful taking (Count VIII), and against Torrico for malicious prosecution (Count III), abuse of process (Count IV), tortious interference with advantageous business relations (Count V), and violation of the Massachusetts Civil Rights Act (Count VI) (Dkt. No. 22). Currently pending is Defendants' motion to dismiss Plaintiff's amended complaint for failure to state a claim (Dkt. No. 23). Defendants also argue that Plaintiff's claims insofar as they relate to the Town's enforcement activities with respect to two of his properties are barred by the doctrine of res judicata based on a Massachusetts Superior Court decision in favor of the Town in an enforcement action regarding those same two properties. For the reasons stated herein, the court grants the motion to dismiss as to the federal claims in the amended complaint and declines to exercise supplemental jurisdiction over the state law claims.[1]

## II. Applicable Legal Standards

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a "'complaint must contain enough factual material to raise a right to relief above the speculative level . . . and state a facially plausible legal claim.'" *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 780 (1st Cir. 2014) (alteration in original) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)). Courts are to employ a two-pronged approach to determine whether a claim has facial plausibility. *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (citing *Ocasio-Hernández*, 640 F.3d at 12).

> First, [the court] "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *A.G. ex. rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation marks omitted). Second, [the court] "must determine whether the remaining factual

---

[1] The parties have consented to the jurisdiction of a magistrate judge for all purposes (Dkt. No. 9). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

> content allows a reasonable inference that the defendant is liable for
> the misconduct alleged." *Id*. (internal quotation marks omitted).

*Medina-Velázquez*, 767 F.3d at 108. "'The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.'" *Ocasio-Hernández*, 640 F.3d at 12 (alteration in original) (quoting *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010)).

In resolving a motion to dismiss, the court accepts as true all well-pleaded facts in the complaint, analyzes those facts in the light most hospitable to the plaintiff's theory, and draws all reasonable inferences for the plaintiff. *United State ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 383-84 (1st Cir. 2011) (citing *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008)). The court may supplement those facts and inferences "by examining 'documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.'" *Butler v. Balolia*, 736 F.3d 609, 611 (1st Cir. 2013) (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). "[W]here the motion to dismiss is premised on a defense of res judicata – as is true in the case at hand – the court may take into account the record in the original action." *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008) (citing *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 183-84 (1st Cir. 2006); *Boateng v. InterAm. Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000)).

Res judicata is an affirmative defense. *Medina-Padilla v. U.S. Aviation Underwriters, Inc.*, 815 F.3d 83, 85 (1st Cir. 2016). "As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." *Rodi v. S. New Eng.*

*Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003)).

**III.    Background**

A. <u>Facts</u>

The facts are set forth as described in the amended complaint and documents attached thereto.

Touponce is a developer of agricultural, residential, and commercial properties in Lee, Massachusetts. Touponce owns a number of properties in Lee, including 15 Cone Avenue, 1125 Meadow Street, 905 Pleasant Street, and 1160 Pleasant Street. At all times relevant to the amended complaint, Torrico was the Building Inspector for the Town.

In March 2008, Touponce commenced a civil action in this court against the Town and Torrico, among others, for violation of 42 U.S.C. § 1983, malicious prosecution, abuse of process, tortious interference with advantageous relations, and violation of the Massachusetts Civil Rights Act. In January 2010, the parties entered into a settlement agreement regarding the case, whereby Touponce provided a release and waiver to Defendants and received a payment of $200,000.00. News of the settlement agreement garnered press coverage in and around the Town. According to Touponce, Torrico harbors malice toward him as a result of the prior litigation and settlement agreement and, as a consequence, singled him out for adverse treatment.

On June 10, 2011, Torrico trespassed on Touponce's property at 15 Cone Avenue by parking his vehicle in the driveway while inspecting a damaged house located at 30 Cone

Avenue.[2] Touponce reported the trespass to the Lee Police Department.

On October 24, 2011, the Town of Lee sent a letter to Touponce informing him that a road improvement project on Tyringham Road near 1125 Meadow Street would interfere with his property rights. The Town requested that Touponce donate permanent and temporary easements related to drainage and advised him that, if he declined to donate the easements, the Town would exercise its power of eminent domain with appropriate compensation. Touponce did not agree to donate drainage easements to the Town. In June 2014, the Town intentionally appropriated and condemned Touponce's land at 1125 Meadow Street for drainage from Tyringham Road without any formal action, without compliance with Mass. Gen. Laws ch. 79, without due process of law, and without compensation. The Town then intentionally diverted water onto the property, thereby causing damage.

On September 12, 2014, Defendants initiated an enforcement action under the Massachusetts State Board of Building Regulations and Standards, codified at 780 Mass. Code Regs. § 101 *et seq.*, alleging that Touponce required a permit to construct a greenhouse at 1125 Meadow Street. However, greenhouses covered exclusively with plastic are exempt from the permitting requirement, and Defendants did not require other property owners in the Town to apply for building permits for "similar greenhouses," including those owned and operated by Clark's Garden Center, which are "virtually identical" to Plaintiff's. To the contrary, "Defendants intentionally treated [P]laintiff differently from others similarly situated without a

---

[2] Touponce had previously sent Torrico a notice pursuant to Mass. Gen. Laws ch. 266, § 120, forbidding Torrico from entering any and all properties owned by Touponce, including 15 Cone Avenue. Mass. Gen. Laws ch. 266, § 120 provides criminal penalties for "[w]hoever, without right enters or remains in or upon the dwelling house, buildings, boats or improved or enclosed land, wharf or pier of another, . . . after having been forbidden to do so by the person who has lawful control of said premises, whether directly or by notice posted thereon."

rational basis for the difference in treatment . . ..”

On November 28, 2014, Touponce applied to the Town for a special permit for the purpose of operating a retail establishment at 905 Pleasant Street.

On December 2, 3, 4, and 5, 2014, Defendants initiated process against Touponce seeking to impose civil fines for alleged zoning violations at 1125 Meadow Street, including violations of the Town's right-of-way. Touponce requested a hearing regarding the alleged violations.

On March 13, 2015, Torrico trespassed on 1160 Pleasant Street. Touponce reported the trespass to the Lee Police Department. Torrico also communicated with the Lee Police Department in connection with the incident. Torrico claimed to have been at 1160 Pleasant Street to investigate a citizen complaint about a tractor trailer being used as a sign, despite the fact that no such complaint was ever made. Torrico advised the police that, as he left 1160 Pleasant Street in his pickup truck, Touponce, who was operating his own pickup truck heading in the opposite direction, crossed the center line into Torrico's lane and almost ran Torrico off the road. As a result of Torrico's report, on March 19, 2015, an officer with the Lee Police Department filed an application for a criminal complaint charging Touponce with reckless operation of a motor vehicle in violation of Mass. Gen. Laws ch. 90, §24. The application lacked probable cause and was initiated in bad faith by Torrico. Also on March 19, 2015, Torrico, again without probable cause and in bad faith, filed a complaint for protection from harassment against Touponce pursuant to Mass. Gen. Laws ch. 258E. A hearing was held regarding the complaint for protection from harassment on March 26, 2015, following which the court denied the protection order and dismissed the action.

On April 27, 2015, Touponce received the special permit for 905 Pleasant Street. This was over five months after the application was filed. According to Touponce, "Defendants

intentionally interfered with, imposed undue delay and frustrated the processing of [P]laintiff's special permit application," causing Touponce to experience lost profits and a loss of property value. Touponce claims that "Defendants intentionally treated [his] special permit application differently from others similarly situated without a rational basis for the difference in treatment."

On May 19, 2015, a probable cause hearing was held on the application for criminal complaint. The application was denied and process did not issue.

In June 2015, Defendants initiated process against Plaintiff seeking to impose civil fines for alleged zoning violations at 1160 Pleasant Street, claiming that a lawfully registered and inspected tractor trailer truck with "Meadow Farm Equipment" written on it constituted an unlawful sign. Torrico has never imposed civil fines against any other occupants of the Town related to signage on a motor vehicle, despite the fact that a number of other businesses in the Town maintain tractor trailer trucks with embossed signage, including South Lee Fire Company, Onyx Paper, McDonalds, Pricechopper, LB Corp., Valley Roll Off Dresser Hull, Noonan Trucking, Tri Town Paving, Gary Obrien Property Services, CG Blacktop, and Lee Hardware. To the contrary, according to Plaintiff, "[D]efendants intentionally treated plaintiff differently from others similarly situated without a rational basis for the difference in treatment . . .."

On September 8, 2015, Defendants issued an order that the Town was to cease doing business with Plaintiff's business known as "Meadow Farm" or "Meadow Farm Equipment." Before that time, the Town had routinely purchased equipment and other material from the business. Touponce maintains that by doing so Defendants "intentionally interfered with [his] business relationship in a manner that was irrational and wholly arbitrary and unrelated to any legitimate stated interest and intentionally treated [his] business differently from others similarly

7

situated without a rational basis for the difference in treatment."

On November 20, 2015, after multiple hearings regarding the alleged violations of the Town's right-of-way at 1125 Meadow Street, a Clerk Magistrate dismissed the violations. The abutting properties to both the east and south also contain structures which encroach on the Town's right of way. The abutter to the east, Drake's Auto Parts, is also a commercial property sitting on the north side of Meadow Street and, as such, is "similar to 1125 Meadow Street in all relevant ways." Defendants did not issue violations against either abutter, however. Instead, Defendants selectively enforced the zoning ordinance against Touponce. According to Touponce, the alleged zoning violations lacked probable cause and Torrico initiated them in bad faith.

      B.  <u>The Massachusetts Superior Court Decision</u>

Defendants attach to their motion to dismiss a May 19, 2017 decision of the Massachusetts Superior Court following a one-day jury-waived trial in an enforcement action brought by the Town against Touponce. Among other matters addressed in the decision are the alleged zoning or building code violations associated with the two structures at 1125 Meadow Street – the alleged greenhouse and the structure protruding into the Town's right of way – and the tractor trailer at 1160 Pleasant Street. The authenticity of the document is not challenged. Since Defendants' argument for dismissal is premised, in part, on res judicata, the court takes the decision into account. *Andrew Robinson Int'l*, 547 F.3d at 51.

Regarding the alleged greenhouse at 1125 Meadow Street, the Superior Court ruled that the structure did not fall under the exemption from building permitting requirements for greenhouses. In so ruling, the court first cited to the relevant portion of the regulations, which exempt from permitting requirements greenhouses covered exclusively with plastic film,

8

provided that the greenhouse is used for purposes "normally expected" for a greenhouse. 780 Code Mass. Regs. § 105.2 (4). The Superior Court found that the structure at 1125 Meadow Street did not qualify for the exemption because it was not covered exclusively with plastic film, and, moreover, it was being used as a storage facility for hay and other products and not as a greenhouse. The Superior Court also noted that the Town had legitimate safety concerns about the structure, given that that the sides were constructed of three rows of concrete blocks simply stacked to a height of approximately six feet, posing a possible risk of collapse.

As to the other structure at 1125 Meadow Street – a stone and concrete wall approximately three feet in height – the court noted that there was no dispute that it was built in the Town's right-of-way. Rather, the issue was whether the Town could require Touponce to take it down, and the Superior Court found that it could. The Superior Court noted that the wall was "immediately adjacent to the traveled way and would create problems with snow removal, as well as, a serious hazard to any wayward operator of a motor vehicle."

Finally, with respect to the tractor trailer, the Superior Court ruled that it was being used as a sign in violation of § 199-7 of the Town's zoning by-laws, which provides that "[n]o trailer-style movable signs or vehicle used primarily or intentionally as a sign shall be permitted." The court based its ruling on subsidiary findings of fact, including that the trailer, which read "Meadow Farm Equipment" in large lettering extending almost its full length, was parked adjacent to the highway for months at a time, usually without an attached tractor; that the property was used as a business selling agricultural products, as well as farm and lawn equipment and power tools, and that most of the time that the trailer was present, there was no

other sign for the business; and that the trailer was used primarily to store and sell hay.

## IV. Discussion

### A. Federal Claims

#### 1. Count I – 42 U.S.C. § 1983

Count I alleges violations of 42 U.S.C. § 1983 against both Defendants. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "A claim under § 1983 has two 'essential elements': the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." *Gagliardi*, 513 F.3d at 306 (quoting *Rodríguez-Cirilo v. García*, 115 F.3d 50, 52 (1st Cir. 1997)). While it is somewhat ambiguously pleaded, Count I is fairly read to state a claim for selective enforcement sounding in the Fourteenth Amendment's equal protection clause and a taking without just compensation in violation of the Fifth Amendment, and that is how Plaintiff treats it in his opposition to the motion to dismiss.

##### (a) Equal Protection Claim

Touponce alleges that Defendants violated the equal protection clause of the Fourteenth Amendment by selectively enforcing local laws against him. To establish a claim for an equal protection violation by way of selective enforcement of law or regulation, the plaintiff must show that "'(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013) (quoting

*Rubinovitz v. Rogato*, 60 F.3d 906, 909-10 (1st Cir. 1995)). Touponce advances a class of one theory, which means that he was singled out for reasons unique to him, not because of his membership in a particular group. *Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 143-44 (1st Cir. 2016) (citing *Snyder v. Gaudet*, 756 F.3d 30, 34 (1st Cir. 2014)). To prevail, class of one plaintiffs must show "that they were 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Freeman*, 714 F.3d at 38 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). *See also Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 639 (1st Cir. 2013) ("Under the class-of-one rubric, an equal protection plaintiff may press a claim 'that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment,' even where he does 'not [show] membership in a class or group.'" (alterations in original) (quoting *Olech*, 528 U.S. at 564)). "[T]he plaintiff ordinarily must also show that the defendant's differential treatment of the plaintiff was motivated by 'bad faith or malicious intent to injure.'" *Snyder*, 756 F.3d at 34 (quoting *Rubinovitz*, 60 F.3d at 911).[3] Defendants argue that Plaintiff's equal protection claim is subject to dismissal because (1) Plaintiff is barred by the doctrine or res judicata from claiming that the Town's enforcement activities relating to the two structures at 1125 Meadow Street – the greenhouse and the structure protruding into the Town's right-of-way – and the tractor trailer at 1160 Pleasant Street lacked a rational basis because the Massachusetts Superior Court found that zoning and building code violations had occurred; and (2) Plaintiff's

---

[3] Touponce has adequately alleged malicious intent to injure.

amended complaint does not support an inference that Plaintiff was treated differently than similarly situated individuals.

        (i)      *Res Judicata*

"Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered. *In re Sonus Networks, Inc., S'holder Derivative Litig.*, 499 F.3d 47, 56 (1st Cir. 2007) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). "Massachusetts recognizes two kinds of res judicata, claim preclusion and issue preclusion." *Id*. (citing *Kobrin v. Bd. of Reg. in Med.*, 832 N.E.2d 628, 634 (Mass. 2005)). Defendants rely on the latter. Issue preclusion, also known as collateral estoppel, is based on "the fundamental principle that courts should not revisit factual matters that a party previously litigated and another court actually decided." *Miller v. Nichols*, 586 F.3d 53, 60 (1st Cir. 2009) (citing *Enica v. Principi*, 544 F.3d 328, 336 (1st Cir. 2008)). Thus, issue preclusion bars relitigation of an issue that was "actually litigated and decided in the first litigation . . . even in the context of a suit based on an entirely different claim." *In re Sonus Networks*, 499 F.3d at 56 (citing *Kobrin*, 832 N.E.2d at 634). Issue preclusion applies when

> (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication. Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment.

*Id*. at 57 (quoting *Kobrin*, 832 N.E.2d at 634).

      Defendants fail to establish the elements of issue preclusion. While there was a judgment on the merits in the Superior Court action and Touponce was a party, the issue in that action as framed by Defendants is not identical to any issue in the current adjudication. Plaintiff's claims

do not rest on whether violations of zoning ordinances or the building code occurred, but rather on whether Defendants singled Touponce out for selective enforcement of those zoning ordinances and provisions of the building code. Even accepting that violations occurred, Touponce could still have a claim for selective enforcement if he could prove that others who are similarly situated violated the same zoning ordinances or building code requirements, but the Town, without a rational basis for the difference in treatment, did not subject them to enforcement proceedings. *See, e.g., Rubinovitz*, 60 F.3d at 910-912 (finding that material issues of fact precluded summary judgment as to whether officials' selective enforcement of code provisions violated the plaintiffs' equal protection rights). Thus, Plaintiff's equal protection claim is not barred by res judicata.

(ii) *Similarly Situated*

"In a class of one equal protection claim, proof of a similarly situated, but differently treated, comparator is essential." *Snyder*, 756 F.3d at 34 (citing *Cordi-Allen v. Conlon*, 494 F.3d 245, 250 (1st Cir. 2007)). "'[P]laintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" *Id*. (quoting *Cordi-Allen*, 494 F.3d at 251). The "similarly situated" comparator must have "'engaged in the same activity . . . without such distinguishing or mitigating circumstances as would render the comparison inutile.'" *Id*. (alteration in original) (quoting *Cordi Allen*, 494 F.3d at 251). "The 'similarly situated' requirement must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" *Cordi-Allen*, 494 F.3d at 251 (quoting *Olech*, 528 U.S. at 565) (Breyer, J., concurring)). Absent such rigor, "virtually every zoning decision . . . would be a candidate to find its way to federal court in the guise of an equal protection claim." *Id*. Thus, even at the

pleading stage, a plaintiff must not only identify comparators, but also explain how they are "similarly situated." *See Najas*, 821 F.3d at 144 (affirming the district court's finding that allowing the plaintiffs to amend their complaint would have been futile where the amended complaint simply identified ten other projects as comparators without explaining how those projects were similarly situated, which "does not cut it, even at the pleading stage"); *Gianfrancesco*, 712 F.3d at 640 (affirming the judgment of the district court dismissing the plaintiff's class of one equal protection claim where the plaintiff identified one similarly situated business, but made no effort to establish how or why the business was similarly situated in any relevant way); *Comley v. Town of Rowley*, No. 17-10038-RWZ, 2017 WL 4927664, at *5 (D. Mass. Oct. 31, 2017) (dismissing the plaintiff's class of one equal protection claim where he identified six comparators, but in no way substantiated how they were similarly situated).

Plaintiff fails to meet his pleading burden. While Plaintiff's amended complaint identifies comparators – something his original complaint failed to do – it does not substantiate how those comparators are "similarly situated" in any relevant way. Instead, Plaintiff relies on conclusory allegations of similarity, which are not entitled to a presumption of truth. With regard to the alleged greenhouse at 1125 Meadow Street, Plaintiff identifies Clark's Garden Center as a comparator, but he makes only a conclusory allegation that the Garden Center's greenhouses are "virtually identical." His amended complaint contains no description of either his greenhouse or those of Clark's Garden Center that would substantiate the asserted similarity. Plaintiff identifies one comparator relative to the right of way violation – Drake's Auto Parts – and makes the conclusory allegation that Drake's is "similar . . . in all relevant ways." However, Plaintiff fails to allege how the structure intruding on the right-of-way at Drake's is similar to the structure on his property. *See Najas Realty*, 821 F.3d at 144 (affirming dismissal of the

14

plaintiffs' class of one claim where the plaintiffs identified ten comparator projects but failed to describe how the projects were similarly situated); *Freeman*, 714 F.3d at 39 (affirming the district court's dismissal of the plaintiffs' class of one claim where the complaint failed to demonstrate how the plaintiffs, who built a tree house in an environmental buffer zone, were similarly situated to their neighbors, whose pool encroached on the same buffer zone). Regarding the tractor trailer, Plaintiff identifies eleven other businesses that maintain tractor trailers with embossed signage, but fails to explain how those businesses are similarly situated in terms of how they utilize their tractor trailers. Finally, with respect to the alleged delay in the granting of the permit for 905 Pleasant Street, Plaintiff does not even identify any comparators, let alone substantiate the relevant similarities.

Because Plaintiff's amended complaint alleges in conclusory terms but does not substantiate how he is similarly situated in relevant ways to the identified comparators, his equal protection claim is subject to dismissal for failure to state a claim.

(iii) *Municipal Liability*

Because Plaintiff fails to plausibly allege an equal protection violation, the court need not consider whether he has pled a basis for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).[4] "'[P]olicy or practice aside, a municipality cannot be liable for the actions of its officials under *Monell* if those actions "inflicted no constitutional harm."'" *Gianfrancesco*, 712 F.3d at 640 n.4 (alteration in original) (quoting *Robinson v. Cook*, 706 F.3d 25, 38 (1st Cir.

---

[4] This conclusion applies to both Counts I and II of Plaintiff's Complaint, insofar as both assert claims against the Town for violation of 42 U.S.C. § 1983.

2013)).

                (b) Takings Claim

The Fifth Amendment, extended to the states by the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V. Plaintiff claims that Defendants violated the Fifth Amendment by using his property at 1125 Meadow Street for drainage from Tyringham Road without paying him. Defendants argue that Plaintiff's takings claim is unripe and subject to dismissal because Plaintiff failed to first exhaust available remedies under state law for seeking just compensation, in accordance with the requirements of *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). In response, Plaintiff contends that *Williamson County's* state exhaustion requirement is a prudential standing rule rather than a jurisdictional bar and argues that this court should overlook *Williamson County*'s prudential requirement because his federal takings claim is "part and parcel of a larger pattern of discriminatory conduct by the defendants out of animosity towards him, so that it would be unfair to require him to litigate his conjoined claims in two separate courts."

In *Williamson County*, the Supreme Court held that a Fifth Amendment takings claim is not ripe in federal court until the plaintiff has first sought "compensation through the procedures the State has provided for doing so." *Id*. at 194. This is so because "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id*. (citing *Hodel v. Va. Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 297 n.40 (1981)). Thus, "[i]f the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." *Id*. at 194-95 (second alteration in original) (quoting *Ruckelshaus v.*

*Monsanto Co.*, 467 U.S. 986, 1013, 1018, n.21 (1984)). "Stated differently, a Fifth Amendment claim is premature until it is clear that the Government has both taken property *and* denied just compensation." *Horne v. Dep't of Agric.*, 569 U.S. 513, 525-26 (2013) (restating the holding of *Williamson County*). *See also Jisser v. City of Palo Alto*, No. 5:15-cv-05295-EJD, 2016 WL 3456696, at *4 (N.D. Cal. June 24, 2016) ("Exhaustion in a takings case is premised on the notion that a state must be afforded the opportunity to address the harm allegedly caused by the state action before a federal court can determine if an unconstitutional taking has occurred." (citing *Sinclair Oil Corp. v. Cty. of Santa Barbara*, 96 F.3d 401, 409 (9th Cir. 1996)). "Further, the compensation need not be paid in advance or at the time of the taking, as long as there is a procedure in place at the time of the taking that is 'reasonable, certain and adequate . . . for obtaining compensation.'" *Downing/Salt Pond Partners, L.P. v. R.I. & Providence Plantations*, 643 F.3d 16, 20 (1st Cir. 2011) (alteration in original) (quoting *Williamson Cty.*, 473 U.S. at 194). Thus, to bring a ripe takings claim in federal court, a plaintiff must allege and prove that he "first sought compensation through state procedures or that 'all potential state remedies are "unavailable or inadequate."'" *Denault v. Ahern*, 857 F.3d 76, 84 (1st Cir. 2017) (quoting *Deniz v. Mun. of Guaynabo*, 285 F.3d 142, 146 (1st Cir. 2002)). Here, Plaintiff has not alleged that he pursued compensation through Mass. Gen. Laws ch. 79, the exclusive remedy for challenging the exercise of eminent domain in Massachusetts. *Kelly v. Day*, 585 F. Supp. 2d 211, 215 (D. Mass. 2008) (citing *Whitehouse v. Town of Sherborn*, 419 N.E.2d 293, 297 (Mass. App. Ct. 1981)). Nor has Plaintiff alleged that the remedies available under ch. 79 are "unavailable or inadequate."

As Plaintiff notes, however, the *Williamson County* state exhaustion requirement is a prudential limitation, rather than an Article III jurisdictional limitation. *Horne*, 569 U.S. at 526

(noting that the "prudential ripeness" consideration is "not, strictly speaking, jurisdictional"). Because "[a] 'Case' or 'Controversy' exists once the government has taken private property without paying for it . . . . whether an alternative remedy exists does not affect the jurisdiction of the federal court." *Id*. at 526 n.6. "But 'merely because exhaustion requirements are prudential does not mean that they are without teeth. Even prudential exhaustion requirements will be excused in only a narrow set of circumstances.'" *Knick v. Township of Scott*, 862 F.3d 310, 327 (3d Cir. 2017) (quoting *Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007)). The First Circuit has not addressed under what circumstances a court may excuse compliance with *Williamson County*'s state-exhaustion requirement. Other circuits have held that defendants waived *Williamson County*'s state exhaustion requirement by removing a case filed in state court where the complaint included state and federal claims, and then attempting to rely on *Williamson County* to bar litigation of the Fifth Amendment takings claim. *See Lilly Invs. v. City of Rochester*, 674 Fed. Appx. 523, 530-31 (6th Cir. 2017); *Sansotta v. Town of Nags Head*, 724 F.3d 533, 544 (4th Cir. 2013); *Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014). *See also Race v. Bd. of Cty. Comm'rs of the Cty. of Lake*, No. 15-cv-1761-WJM-KLM, 2016 WL 1182791, at *2-3 (D. Colo. Mar. 28, 2016); *Martini v. City of Pittsfield*, No. 14-30152-MGM, 2015 WL 1476768, at *4-5 (D. Mass. Mar. 31, 2015); *Athanasiou v. Town of Westhampton*, 30 F. Supp. 3d 84, 87–89 (D. Mass. 2014); *River N. Props., LLC v. City & Cty. of Denver*, No. 13-cv-01410-CMA-CBS, 2014 WL 1247813, at *2–9 (D. Colo. Mar. 26, 2014); *Merrill v. Summit Cty.*, No. 2:08CV723DAK, 2009 WL 530569, at *2–3 (D. Utah Mar. 2, 2009). *But see Snaza v. City of St. Paul, Minn.*, 548 F.3d 1178, 1182 (8th Cir. 2008). This is not the situation here. It was Plaintiff's choice to initiate his takings claim in federal court without first exhausting available state remedies. Plaintiff could have filed his Mass. Gen. Laws ch. 79 and Fifth

18

Amendment takings claims in state court. *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 346 (2005). This does not warrant departure from the ripeness requirements of *Williamson County*. *Knick*, 862 F.3d at 328 (observing that "litigants must be incentivized to pursue relief through proper channels."). Accordingly, the court dismisses Plaintiff's takings claim without prejudice to whatever right Plaintiff might have to pursue the claim in state court.

    2. Supplemental State Law Claims

When, as in this case, an action includes federal law and state law claims, a federal district court may exercise supplemental jurisdiction over state law claims that are so closely related to the federal claims that they "form part of the same case or controversy." 28 U.S.C. § 1367(a). "However, where a plaintiff has failed to state a viable claim under federal law and jurisdiction over the remaining claims is based solely on supplemental jurisdiction, a 'district court has discretion to decline to exercise supplemental jurisdiction.'" *See LeClair v. Mass. Bay Transp. Auth.*, Civil Action No. 17-11111-FDS, 2018 WL 314813, at *6 (D. Mass. Jan. 5, 2018) (quoting *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 431 n.10 (1st Cir. 2010)). Indeed, "it can be an abuse of discretion – if no federal claim remains – for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of state law that is better addressed by the state courts." *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) (citing *Desjardins v. Willard*, 777 F.3d 43, 45-46 (1st Cir. 2015)). "Whether a court should decline supplemental jurisdiction depends on a 'pragmatic and case-specific evaluation of a variety of considerations,' including 'the interests of fairness, judicial economy, convenience, and comity.'" *Desjardins*, 777 F.3d at 45 (quoting *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998)). "[T]he balance of competing factors ordinarily will weigh strongly in favor of

declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation." *Camelio*, 137 F.3d at 672 (citing *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995)). Here, all factors weigh in favor of the court's declination of continuing jurisdiction.

V. **Conclusion**

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss. Plaintiff's 42 U.S.C. § 1983 claims against both Defendants are dismissed, with the dismissal of the claim for a Fourteenth Amendment equal protection violation being with prejudice and the dismissal of the claim for a Fifth Amendment takings violation being without prejudice. This leaves no remaining federal claims. The supplemental state law claims are dismissed without prejudice. Judgment shall be entered accordingly. The case may be closed on the court's docket.

IT IS SO ORDERED.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED: April 6, 2018